## Northern Pacific Ry. Co. v. I. W. Lewis.

1. COMMON CARRIERS—*The Gist of the Action in Cases Against.*— In actions on the case against a carrier for loss or injury done to property, the wrong is the gist of the action, and the contract collateral thereto; but in all actions of assumpsit (on the contract) against a carrier, the contract to deliver is the gist of the action.

Northern Pacific Ry. Co. v. Lewis.

2. SAME—*What is Not Sufficient Interest to Enable a Consignor to Maintain a Suit in Tort.*—The contingent right of a vendor to stop the goods *in transitu* in case of the insolvency of the vendee, is not a sufficient interest in the goods to enable the consignor to maintain a suit in tort for loss or damage to the goods.

3. PRESUMPTIONS—*When Goods are Consigned Without Reservation on the Part of the Consignor.*—When goods are consigned without reservation on the part of the consignor, the legal presumption is that the consignee is the owner from the time of their delivery to the carrier, and in such case the entire risk of transportation is upon the consignee.

**Action in Case,** for damages to goods. Appeal from the Circuit Court of Union County; the Hon. ALONZO K. VICKERS, Judge, presiding. Heard in this court at the August term, 1899. Reversed. Opinion filed March 16, 1900.

MONROE C. CRAWFORD, K. K. KNAPP and MARK BREEDEN, JR., attorneys for appellant.

JAMES LINGLE, attorney for appellee; R. H. BUCKINGHAM, of counsel.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case, in the Circuit Court of Union County, by appellee against the Mobile and Ohio Railroad Company, the Wabash Railroad Company, the Chicago, Milwaukee and St. Paul Railway Company, and the Northern Pacific Railway Company, to recover for damage to a car load of sweet potatoes, while being transported from Alto Pass, Illinois, to Butte, Montana. During the progress of the trial appellee dismissed his suit as to all the defendants except the Northern Pacific Railway Company, and the case proceeded with that company as the sole defendant. Trial was by jury. Verdict and judgment in favor of appellee for $369.60.

Appellee resided at Alto Pass, Illinois, and was the agent of the Mobile and Ohio Railroad Company, at that place. He charges in each count of his declaration that he caused to be delivered to the Mobile and Ohio Railroad Company at Alto Pass, Illinois, 154 barrels containing

sweet potatoes, of the plaintiff, and thereafter said property was delivered in turn to the other named connecting carriers, to be safely and securely carried to Butte, Montana, and there delivered for the plaintiff, and that defendant did not safely and securely carry the same for the plaintiff. The declaration charges that appellee was the owner of the goods; that the undertaking was to transport them " for the plaintiff," and at the point of destination to deliver them " for the plaintiff." The amount of the verdict and judgment is the full value of the goods.

The first question confronting us in this case is whether, under the declaration and the evidence, appellee can maintain the action, for want of ownership or any special interest in the property undertaken to be transported. Upon the general question as to whether, when goods committed to a common carrier for transportation are lost or damaged, the right of recovery is in the consignee, there is great contrariety of opinion and much conflict of authority. On the one hand it is laid down as a general rule " that if a tradesman order goods to be sent by carrier, the moment the goods are delivered to the carrier it operates as a delivery to the purchaser; that the whole property immediately vests in the purchaser, and that he alone can bring an action for any injury done to the goods." On the other hand it is laid down, as a general rule, that " the consignor's contract with the carrier supersedes the necessity of showing the ownership in the goods, and that the consignor may maintain the action, though the goods may be the goods of the consignee." The confusion may be somewhat cleared up by an examination into the facts of the various cases and the character of the action brought. The remedy is always sought, either by action of tort, charging failure on the part of the carrier to perform some legal duty, or by action on the contract, charging breach of an express or implied contract.

It is fundamental, that one to sustain an action for tort must have sustained some injury as a result of the wrong complained of. It is not enough that the party sued has

failed in some duty, but such failure must have injured the party suing. It is also accepted, that one who voluntarily and fairly enters into contractual relations with another, can not, ordinarily, deny that other's right to maintain an action for breach of such contract. We have carefully examined all the texts and all the cases accessible to us. They are too numerous to permit of comment in detail. In our opinion the present state of the law upon this question is correctly stated in Carter v. Graves, 9 Yerger's Reports, 446, and is tersely expressed in the syllabus, as follows:

" In all actions on the case against a carrier for loss or injury done to the property, the wrong is the gist of the action, and the contract collateral thereto; but in all actions of assumpsit (on the contract) against a carrier, the contract to deliver is the gist of the action. A consignor can not maintain an action on the case for a loss or injury to the property consigned without showing that he has a special or general property therein, but he may in all cases maintain an action of assumpsit upon a contract to deliver the property safely."

The contingent right of a vendor to stop the goods *in transitu* in cases of the insolvency of the vendee is not sufficient interest in the goods to enable the consignor to maintain a suit in tort for loss or damage to the goods. Hutchinson on Carriers, Sec. 731; American and English Railroad Cases, Vol. 30, note, page 117.

Wherever the right of a consignor to maintain a suit exists, he may always sue on the contract; and if he has a general or special property in the goods lost or damaged, he may have his election to sue in tort or on the contract.

The cases relied on by counsel for appellee are: I. C. R. R. Co. v. Schwartz, 11 Ill. App. 482; C. & A. R. R. Co. v. Shea, 66 Ill. 471; Hooper v. Chicago & N. R. R. Co., 27 Wis. 81; Finn v. Western R. R. Corp., 112 Mass. 524; Great Western Ry. Co. v. McComas, 33 Ill. 185; and Spence et al. v. Norfolk R. R. Co., 92 Va. 102.

In the Massachusetts case the court says:

"When carrying goods from seller to purchaser, if there is nothing in the relations of the several parties except

what arises from the fact that the seller commits the goods to the carrier as the ordinary and convenient mode of transmission and delivery, in execution of the order or agreement of sale, the employment is by the seller, the contract of service is with him, and actions based upon that contract may, if they must not necessarily be, in the name of the consignor."

And further in the same case the court says:

" There are many cases, both in England and the United States, in which the doctrine appears to be maintained that * * * a remedy for injury resulting from breach of duty by a carrier can be had only in the name and behalf of some one having an interest in the property at the time of the breach. * * * It (the doctrine above stated) will hold good in actions of tort, because they are based upon injury to some interest or right of the plaintiff."

An examination into these cases discloses that all of them except the one in 33d Ill. and the one in the 92d Va. are actions on the contract, and in no sense actions of tort. The opinion in the case in 33d Ill. will be better understood when read in connection with the facts disclosed in the original record. The true relation of McComas to the property is there made clear. Prior to the beginning of McComas' connection with the property or with the case, the property was in Piatt county, and William C. Conrad had a chattel mortgage on it. The sheriff of Piatt had taken the property on an execution. Conrad, by power of attorney, appointed McComas his agent and attorney in fact to get possession of the property under the mortgage. McComas succeeded, by means of a replevin writ against the sheriff, in getting possession, and thereafter, on the 18th day of June, 1860, delivered the goods to the railroad company at Bement, to be transported to a station called the State Line, taking in his own name the receipt or bill of lading set out in the opinion. While the legal title was in Conrad, yet McComas, the consignor, was the bailee and qualified owner of the goods. Kerr, the consignee, so far as the record discloses, had no interest. It is solely on the ground of his qualified ownership as bailee that McComas was allowed to maintain his action of tort. In the argument of the

opinion in the case in 92d Va., no distinction is drawn between actions of tort and actions on the contract, yet the case itself is clear. The action was in case, and plaintiff's attorney fully understood that to maintain this action he must prove that plaintiffs had no interest or property right in the goods. And he did prove this by the contract for sale existing between plaintiffs and the consignees. The court holds that 'under the particular conditions in the contracts in evidence, the title did not pass to the consignees. When goods are consigned without reservation on the part of the consignor, the legal presumption is that the consignee is the owner from the time of their delivery to the carrier, and in such case the entire risk of transportation is upon the consignee. This presumption, however, is not conclusive, but may be overcome by evidence, as was done in the cases referred to in 33d Ill. and 92d Va.

In this case, not only does the presumption of the law stand against appellee, but his own testimony concludes him. During his examination he was asked:

"Q. I wish you would tell the jury what arrangement you had made with the consignees, Stromberg & Co., to whom you were to consign the potatoes; if they were to be sold on commission or account, or whether you had made the sale? A. I sold them to Stromberg & Co. for $2.40 per barrel on the track at Alton Pass. Q. You say you sold these potatoes on the track at Alton Pass, in the car, for what? A. $2.40 per barrel. Q. Loaded in the car? A. Yes, sir. Q. They were sold to Stromberg & Co.? A. Yes, sir. Q. You were told how to send it? A. Yes, sir. Q. And you put on the way bill just what Stromberg & Co. told you, according to their directions? A. Yes, sir."

Under the facts in this case, by the sale, consignment and delivery to the railroad company, the title to the potatoes passed, *eo instanti*, to the consignees, Stromberg & Co., and upon them rested the entire risk of transportation.

This is an action of tort; the declaration charges breach of a common law duty whereby certain goods were lost and injured; that appellee was the owner of the goods and by such loss and injury sustained damage. Ownership is a

material averment in this declaration, and the evidence wholly fails to prove or tend to prove that appellee had any sort of ownership or interest in the goods, at the time it is claimed they were lost and injured. On this state of case, he can not recover in this action. As this is decisive of the case, we do not feel it our duty to discuss the many other interesting questions raised.

The judgment of the Circuit Court is reversed.